**Affirmed and Memorandum Opinion filed July 16, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00418-CV

---

### PATRICIA MARTIN, Appellant

### V.

### METHODIST HEALTH CENTERS D/B/A HOUSTON METHODIST WILLOWBROOK AND DIEGO C. MARINES COPADO, M.D., Appellees

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-19517**

---

## MEMORANDUM OPINION

Patricia Martin appeals the dismissal with prejudice of her medical malpractice lawsuit against appellees, Dr. Diego C. Marines Copado and Methodist Health Centers d/b/a Houston Methodist Willowbrook. After the trial court granted appellees' objections to Martin's preliminary expert report required by Texas Civil Practice and Remedies Code section 74.351(a), the court indicated in open court that it was granting Martin a 30-day extension to file an amended report, but the

court never signed a written order regarding the extension, and Martin did not serve an amended report for many months. The trial court ultimately granted appellees' motion to dismiss.

In three issues, Martin contends that the trial court erred in (1) concluding that an oral pronouncement in open court started the clock running for the 30-day extension; (2) sustaining appellees' objections to the original report; and (3) not signing a written order regarding the 30-day extension. Concluding that Martin failed to preserve her complaints regarding the extension and the trial court did not err in sustaining appellees' objections to the original report, we affirm the trial court's judgment.

## *Background*

Martin filed suit against appellees for medical malpractice on April 1, 2021, contending that Dr. Marines failed to timely diagnose her rectal cancer, resulting in additional required procedures to treat the cancer and permanent injuries. Martin then timely served appellees with an expert report prepared by Dr. James Cusack, Jr. as required by Civil Practice and Remedies Code section 74.351(a). Tex. Civ. Prac. & Rem. Code § 74.351(a). Among other opinions, Cusack stated that Marines'

> failure to perform a thorough digital rectal examination or sigmoidoscopy/proctoscopy to establish a diagnosis of low rectal cancer when Patricia Martin first presented with rectal bleeding, rectal pain and fecal incontinence resulted in a significant delay of diagnosis of six months during which time the tumor continued to grow into the surrounding tissues.

Cusack further asserted that "the tumor progressed to the point of perforation" within a month of a proper diagnosis by another doctor, "leading to a series of . . . additional procedures [that] would not have been necessary or performed if

2

[Marines] had performed a thorough DRE, proctoscopy/sigmoidoscopy during either his first or second evaluation." Cusack therefore concluded that

> [t]he six-month delay in diagnosis led to progression of disease to a locally-advanced Stage that perforated within 1 month of the diagnosis made by [the second doctor]. Had the patient been diagnosed with rectal cancer in April or May of 2019, the patient would have initiated treatment and would not have perforated.

In response, appellees filed an answer along with objections to the report and moved to dismiss the lawsuit for failure to timely serve an adequate report under section 74.351. Among their objections, appellees asserted that Cusack's opinion on causation was conclusory and "devoid of any explanation." In her response to the objections and motion to dismiss, Martin asked in the alternative for a 30-day extension, as permitted under section 74.351(c), should the report be deemed inadequate. *Id*. § 74.351(c).

On October 27, 2021, the trial court held a hearing on the objections and the motion to dismiss. After the parties made their arguments regarding the report's adequacy, the trial court stated, "The objections are sustained. You are allowed a rewrite, [Martin's counsel], within 30 days." No mention was made during the hearing regarding whether a written order granting an extension under section 74.351(c) was required or would issue. Martin's counsel did not request a written order but merely told the trial judge, "Thank you, Your Honor," after the extension was offered.

Appellees filed a second motion to dismiss on April 12, 2022, based on Martin's failure to file an amended report within 30 days of the first hearing. On April 27, 2022, six months from the day of the first hearing, Martin filed a response to the second motion to dismiss. In the response, for the first time, Martin's counsel asserted that an order granting a 30-day extension for an expert

report was required to be in writing to start the running of the extension.

On May 4, 2022, the trial court held a hearing on the second motion to dismiss. During this hearing, Martin's counsel acknowledged that an amended report had not yet been prepared, but he argued that the motion to dismiss should be denied because no written order had ever issued to start the running of the 30-day extension. Counsel insisted that the lack of a written order also meant there had been no ruling on the request for an extension. The trial judge, however, emphasized counsel's lack of effort to obtain a written order and questioned why Martin should be able to take advantage of the several months of delay while doing nothing to obtain a ruling from the court. The judge also openly pondered if she should decline to grant an extension and instead grant the original motion to dismiss based on the inadequacy of the initial report. Ultimately, however, the court took the issues under advisement.

Over ten months later, on March 20, 2023, Martin served Cusack's amended report on appellees, who then filed a third motion to dismiss, urging both that the amended report was untimely and that it was still inadequate. The trial court held a third hearing on the matter on May 19, 2023. During the hearing, the judge questioned Martin's counsel regarding whether any request had been made for a written order on the 30-day extension. Counsel acknowledged that no specific request had been made either by written request or by calling court staff. But, counsel still insisted that the time for the 30-day extension had never begun running because no written order was ever signed. Counsel also maintained that the amended report could not be considered timely served until the 30-day period had begun; accordingly, counsel requested the court sign a written order so that the amended report could be properly served. At the conclusion of the hearing, Martin's counsel again specifically requested that the judge sign a written order

granting the extension, appellees' counsel asserted that it was too late for that, and the judge again took everything under advisement. The judge subsequently signed an order granting the third motion to dismiss and dismissing Martin's claims with prejudice.

### *30-Day Extension*

As stated above, in her first and third issues, Martin contends that the trial court erred in concluding that an oral pronouncement in open court started the clock running for the 30-day extension and in not signing a written order granting the 30-day extension. Among other arguments, appellees assert that Martin failed to preserve these contentions in the trial court. We will begin by discussing the impact of one of our prior opinions on the present case before turning to the question of whether Martin preserved her issues concerning the 30-day extension.

**Lopez v. Brown.** As stated, we start our analysis by addressing the parties' arguments concerning our prior opinion in *Lopez v. Brown*, 356 S.W.3d 599 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Martin contends that *Lopez* is controlling precedent and requires a written order to start the running of the 30-day extension under section 74.351(c). Appellees contend the part of the opinion discussing a written order was mere dicta that did not establish controlling precedent. We agree with Martin on this point: *Lopez* is precedential and requires a written order.

*Lopez*, like this case, concerned a grant of an extension under section 74.351(c), which provides as follows:

> (c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the applicable deadline

has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

Tex. Civ. Prac. & Rem. Code § 74.351(c).

In *Lopez*, the trial court reportedly stated in a hearing—of which no record was made—that it was granting the plaintiff a 30-day extension to submit an adequate expert report, but the court did not sign a written order until almost two months later. 356 S.W.3d at 601. Meanwhile, the plaintiff served an amended report, and the defendant filed a second motion to dismiss, contending that the plaintiff had failed to file an adequate report within 30 days of the hearing at which the extension was orally granted. *Id.* In concluding that the report was timely served, a panel of this court explained that the notice of the 30-day extension referenced in section 74.351(c) was required to be in the form of a written order and thus the clock did not start on the extension until the plaintiff received the written order. *Id.* at 602–03 ("[W]e conclude that the notice provided for in section 74.351(c) must be in the form of a written order, rather than a trial court's mere oral pronouncement from the bench.").

Appellees suggest that the procedural facts of *Lopez* are distinguishable from those in the current case because the hearing in *Lopez* was not recorded but the hearing in this case was recorded. While this is a distinguishing factor between the cases, the lack of a record of the hearing was not the ultimate basis for the holding in *Lopez*. Indeed, the panel in *Lopez* indicated that even assuming the judge's recollection of what transpired was the equivalent of a record of the hearing, it would still not be sufficient because a written order was required. *Id.* at 602 ("Even if the judge's oral statement of recollection could be considered the functional equivalent of the record of the actual hearing itself, the oral pronouncement from the bench is inadequate to constitute notice of a 30–day extension under section

6

74.351(c).").[1] Agree or disagree with the reasoning in *Lopez*, it is governing precedent of this court until overruled by a higher court or this court sitting en banc. *See In re C.J.B.*, 681 S.W.3d 778, 785 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("[U]nder the doctrine of horizontal stare decisis, whether or not we agree with the [] opinion, we are bound to apply the holdings from that precedent.") (citing *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022)); *see also Mem'l Hermann Health Sys. v. Heinzen*, 584 S.W.3d 902, 908–09 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Lopez* for the proposition that a written order is required).[2]

**Preservation.** We now turn to the question of whether Martin preserved her issues concerning the 30-day extension. In order to preserve a complaint for appellate review, a party must make a timely and sufficiently specific request, objection, or motion and obtain an express or implied ruling from the trial court. *See* Tex. R. App. P. 33.1(a); *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999); *Fontenot v. Fontenot*, 667 S.W.3d 894, 908 (Tex. App.—Houston [14th Dist.] 2023, no pet.).

---

[1] It should be noted that *Lopez* does contain some inconsistent language in that it also suggests that the defendant did not establish notice occurred at the hearing because there was no record of the hearing and that the only conclusive evidence of notice was the court's order, but, as stated, ultimately, the panel held that even assuming the judge's recollection was the equivalent of a hearing record, a written order was required for notice. 356 S.W.3d at 602–03.

[2] Appellees additionally argue that the Texas Supreme Court's opinion in *FieldTurf USA, Inc. v. Pleasant Grove I.S.D.*, 642 S.W.3d 829 (Tex. 2022), effectively overruled *Lopez*. We disagree. In *FieldTurf*, the supreme court held that an on-the-record, oral ruling sustaining an objection to summary judgment evidence sufficed to strike the evidence from the summary judgment record even though there was no written order. *Id.* at 830–31. Among the reasons for distinguishing *FieldTurf* from *Lopez* is the fact that *FieldTurf* concerned the question of whether a reporter's record could be considered in an appeal from a summary judgment proceeding in regard to evidentiary rulings and *Lopez* concerned the proper form for statutory notice of an extension under section 74.351(c). *Compare FieldTurf*, 642 S.W.3d at 836–37, *with Lopez*, 356 S.W.3d at 602–03. These are two different questions. Nothing in *FieldTurf* overturns the holding in *Lopez*. *Lopez* is still controlling law that we are required to follow. *See In re C.J.B.*, 681 S.W.3d at 785.

As described in detail above, Martin went months before attempting to obtain a ruling on her request for a 30-day extension. Although she made a request for an extension in her initial response to appellees' objections and motion to dismiss—as an alternative, should the objections be sustained—she neither mentioned the need for, nor requested, a written ruling until six months after the first hearing when she filed her response to appellees' second motion to dismiss. But, even then, she did not present the court with a proposed order or specifically bring the need for a written order to the court's attention. At the second hearing, Martin's counsel acknowledged having made no attempt to obtain a ruling from the court in the intervening time period. Then, in the third hearing over a year later, counsel again acknowledged making no attempts to obtain a written order. Counsel, in fact, never obtained a written ruling from the trial court. Under the circumstances, we conclude that Martin failed to preserve her issues regarding the 30-day extension by making a timely and specific request or motion and obtaining a ruling thereon. *See* Tex. R. App. P. 33.1(a); *McKenzie*, 997 S.W.2d at 280; *Fontenot*, 667 S.W.3d at 908; *see also Sampson v. E. Tex. Med. Ctr. Tyler*, No. 12-17-00170-CV, 2018 WL 459414, at *4 (Tex. App.—Tyler Jan. 18, 2018, no pet.) (mem. op.) (holding plaintiffs failed to preserve issue concerning trial court's failure to grant 30-day extension). Accordingly, we overrule Martin's first and third issues.

### *Adequacy of Report*

**Governing law.** In her second issue, Martin contends that the trial court abused its discretion in determining that Cusack's original expert report was deficient.[3] An expert report required under section 74.351(a) must "provide a fair

---

[3] Martin does not assert either that the amended report should be considered in this appeal or that the amended report cured any inadequacy in the original expert report. We therefore do not consider the amended report.

summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). Failure to meet this standard risks dismissal of the claim. *See id*. § 74.351(a)–(b); *E.D. ex rel. B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022).

When defendants challenge the adequacy of a report, the trial court must grant a motion to dismiss "if it appears to the court . . . that the report does not represent an objective good faith effort to comply with the definition of an expert report." Tex. Civ. Prac. & Rem. Code § 74.351(l); *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018). An expert report satisfies this "good-faith effort" requirement if the report discusses the standard of care, breach, and causation with sufficient specificity to (1) inform the defendant of the specific conduct called into question and (2) provide a basis for the trial court to conclude that the claims have merit. *See Baty*, 543 S.W.3d at 693–94; *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). Although a report need not marshal the plaintiff's proof, it must provide more than conclusory statements concerning the applicable standard of care, breach, and causation. *See Baty*, 543 S.W.3d at 693; *Jelinek*, 328 S.W.3d at 539, 540 n.9. Regarding causation, a report must explain "how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 540. The purpose of the expert-report requirement is to deter frivolous claims, not to dispose of claims regardless of their merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

A court's inquiry into adequacy is confined to the four corners of the report, taken as a whole. *E.D.*, 644 S.W.3d at 664. The necessary information must be found in the text of the report itself; omissions cannot be supplied by inference.

*Hall v. Davies*, 598 S.W.3d 803, 807 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Scoresby*, 346 S.W.3d at 555–56). "We review a trial court's decision to grant or deny a motion to dismiss based on the adequacy of an expert report for an abuse of discretion." *Abshire v. Christus Health Se. Texas*, 563 S.W.3d 219, 223 (Tex. 2018). "A trial court abuses its discretion if it rules without reference to guiding rules or principles." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). "When reviewing matters committed to the trial court's discretion, 'the reviewing court may not substitute its judgment for that of the trial court.'" *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 512–13 (Tex. 2017) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)). Under this standard, "close calls must go to the trial court." *E.D.*, 644 S.W.3d at 664 (quoting *Larson v. Downing*, 197 S.W.3d 303, 304 (Tex. 2006)) (alternation omitted).

**Analysis.** As mentioned above, appellees objected to Cusack's report as being conclusory on the question of causation. More specifically, appellees asserted that while Cusack opined that if Marines had diagnosed Martin with rectal cancer sooner, her rectal mass would not have progressed to an advanced stage and perforated, he never explained what causes a tumor to perforate or how or why an earlier diagnosis would have prevented the perforation. "To the contrary," appellees assert, Cusack admitted that the cancer was subsequently diagnosed by another doctor before it perforated but the diagnosis did not prevent the perforation. Appellees argue that Cusack's opinion on causation failed to satisfy the statutory requirements because it consists of nothing more than a conclusory assertion—an *ipse dixit*, devoid of any explanation—that a delay in diagnosis caused the perforation, citing *Jelinek*, 328 S.W.3d at 540 (stating that section 74.351(a) requires a report to explain "how and why the breach caused the injury

based on the facts presented"). In the hearing on the objections, appellees additionally highlighted our opinion in *Baylor College of Medicine v. Davies*, 599 S.W.3d 323, 328 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("In a delayed-diagnosis case such as this, an expert report is needed to explain how the complained-of harm would not have occurred if the diagnosis had been timely.").

Also, in the hearing on the objections, the trial judge reiterated that Cusack's report did not explain what a perforation is or how or why earlier detection could have prevented it in this case. The judge also noted that although Cusack said that treatment could have occurred earlier if detection had occurred earlier, he did not specify what that treatment would have been, how it could have prevented the perforation, or on what basis Cusack concluded the treatment would have occurred in time to prevent perforation. Lastly, the judge observed that Cusack failed to explain either why the lack of detection and the perforation meant that more procedures were required and the treatment was more complicated or why the lack of detection resulted in permanent injuries.

Appellees' complaints and the trial court's observations appear well founded. Cusack's opinions on causation read as conclusory statements. Although Cusack indicated the failure to detect the cancer resulted in continued growth of the tumor, he failed to explain what perforation was or how early detection could have prevented the perforation and the resulting complications; he simply asserts that it would have. Accordingly, the trial court did not abuse its discretion in sustaining the objections. *See Jelinek*, 328 S.W.3d at 540 (stating that section 74.351(a) requires a report to explain "how and why the breach caused the injury based on the facts presented"); *Davies*, 599 S.W.3d at 328; *see also E.D.*, 644 S.W.3d at 664 ("[C]lose calls must go to the trial court."). We therefore overrule Martin's second issue.

### *Conclusion*

Having overruled each of Martin's issues, we affirm the trial court's judgment.

/s/    Frances Bourliot
       Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.